May it please the Court, Daniel Tenney for the United States. Thank you. Those are five minutes for rebuttal. The controversy that gave rise to this litigation arose when the Department of Justice took the position that certain state and local enactments were inconsistent with 8 U.S.C. 1373. That controversy was resolved in plaintiff's favor in both district court litigation and ultimately in a series of decisions by this Court holding that the state and local enactments at issue were consistent with 8 U.S.C. Section 1373. May I stop you there? I'm a little puzzled by at least the written submission that DOJ has indicating that you are reserving your right to reimpose the conditions depending on the outcome of this and other litigation. Are you conceding that the applicability of the prior cases, meaning that you are enjoined from imposing those conditions? I'm not sure I'm understanding which submission you're referring to, Your Honor. Well, the DOJ press release, I guess, is what I'm referring to. This says you think it's moot. You're not going to enforce it until litigation about it ends. What is DOJ's position with respect? Do you think you're barred from imposing the conditions? The conditions themselves as opposed to the statute in another context. Yes. I think the press release you're referring to probably precedes the finality of the Chicago nationwide injunction. In this case, you're acceding to those portions of the injunctions, which say you cannot enforce the conditions. That's correct. We're not appealing that. I know you haven't appealed it, but it is relevant to the justiciability if, in fact, you're keeping a hold card and saying, well, we've got to wait for the end of this litigation, and then we may or may not impose the conditions. Your Honor, with respect to the conditions, there's nothing else that's going to happen. The conditions are gone. They're enjoined, both in this case and in others. Okay. Thank you for the clarification. Then with regard to what this Court held in the last appeal was that having concluded that the statutes that gave rise, the state and local enactments that gave rise to the controversy did not conflict with Section 1373, it wasn't necessary to go further and issue a constitutional ruling invalidating an act of Congress on its face. And that's the same analysis we're asking the Court to adopt here, to say the injuries that gave rise to this litigation were identified statutes of San Francisco, California, Portland, and Oregon, all of which the claimed defect in them by the federal government related to the sharing of information other than what this Court has now held Section 1373 is limited to. So as a result, there's no more controversy between the parties, concrete controversy that would give rise, and this is an extraordinary thing. I mean, we have these district courts that have held that an act of Congress is facially unconstitutional, but they've done so outside of any factual setting where they would actually be applied because the statutes, the state enactments, the things that the states and localities said that they wanted to do, it's not clear, it's now clear that they can do perfectly consistent with those acts of Congress. And so what you want is a plain vacation? Yes. You would vacate just insofar as they ruled that the act of Congress was unconstitutional, the declaration and injunction to that effect, not to touch anything of having to do with the grants, but just to vacate those portions that were unnecessary constitutional rulings. Yeah. I mean, I don't fault the district courts for reaching those issues. They often do in the alternative. And in Oregon, we didn't have any case law that applied to Oregon. There were no decisions that were applied specifically to Oregon, certainly. Recording in progress. The applications were, you could extend other case law to it, but there's nothing wrong with the, I think, the district courts reaching those. So I don't fault them at all. I think the only question now is, given your concession and given your concession that you're enjoined, what's left of the case? Well, there's a difference between reaching the issue. If the district court had said the ground on which I'm going to enjoin the condition is my legal conclusion that this act of Congress is unconstitutional, you could argue about whether it should have gone that far, but that would be a totally separate matter. But issuing a separate judgment that says you are, either there's a declaration or you are heretofore enjoined from applying that, that's supplying additional relief beyond what's necessary for the plaintiffs to remedy the injuries that gave rise to the litigation. That's because, I mean, if they had said, you know, I mean, the district court in San Francisco and California had a series of alternative holdings. And, you know, we may not agree that he should have reached all of those or that he got them correct. But if he had stopped there and said, for all of these reasons, including constitutional statutory interpretation, interpreting the Berne-Jagg statute, interpreting Section 1373, and constitution or constitutional avoidance, for all of those reasons, I'm enjoining you and you can't apply these conditions anymore. That would be one thing and we wouldn't be here. But instead he says, I'm also going to issue a standalone declaration and injunction saying that this act of Congress on its face is inconsistent with the Constitution and, therefore, in any other context, having nothing to do with these state and local enactments, having nothing to do with these grants, they can't be applied to these plaintiffs anymore at all. That's the part of the judgment that we're objecting to. No, I understand that. And we submit that there's no basis for the court to have gone that far even then. And now that the alternative grounds for the other ruling have been upheld, there's no reason for this court to reach this constitutional issue. And that's exactly what happened in the last case. The court said we don't have to reach it because we can resolve the controversy between the parties on these statutory grounds. So we're not really treading new ground here. What the plaintiffs want is to tread new ground in the form of holding for the first time in a court of appeals that this act of Congress is unconstitutional. I'm happy to keep talking about why you shouldn't reach that question, or I can turn to the merits of it. I was just going to say your time is running down, so you should turn to the merits. This is an extreme extension of what the Supreme Court has said. In Prince and in New York and in Murphy, those were all circumstances where Congress was directing states and localities to participate in a federal regulatory program. So in Murphy, the most recent case, they were saying, we want you, the states, to make sports gambling unlawful. And so as a matter of state law, you have to now go out or at least have laws on the books that make it illegal to do certain things under state law. There's nothing like that happening here. And that's why this was distinguished in Prince. What the court said in Prince was that it didn't have to consider information-sharing statutes that did not involve the actual participation by a state in a federal regulatory program. And that's what we're talking about in this case. We're talking about an information-sharing provision. And so just to circle back to where I started, this is just a question of saying, oh, the Supreme Court's essentially already decided that this act of Congress is unconstitutional and a question about whether this court should sort of go along. This is breaking new ground and saying a whole new category that the Supreme Court has preserved and that the Supreme Court distinguished from the logic of the three Supreme Court decisions that we have in this area. A whole new category of act of Congress is now going to be called into question to say whenever Congress requires the sharing of information. And I would also note, as we did in our brief, that this is a facial challenge. They're saying that there's no set of circumstances in which this act of Congress, these two acts of Congress, can be constitutionally applied. And one of the difficulties of assessing that is that we don't have a factual scenario here at all. Can you provide one that you think would be lawful? Well, I mean, we think all of them are lawful, Your Honor. But my point here is that we don't have an example of one that's unlawful. But I can provide some examples. No, I mean, just in context. I mean, I'll give two examples. The Second Circuit said that it was critical. It was clear from the legislative history of 1373 that one of the things that Congress thought was important was that funding not be provided to states who are then not cooperating with the federal government. And we've briefed about how this very case arose in the context of a funding condition. And in that context, you wouldn't have to apply the commandeering analysis. You would just apply the spending clause analysis. And so certainly it would be constitutional as applied in that context. Now, in terms of applying as a standalone provision, I mean, this is about cooperation between the federal government and the states. So if the federal government and the states were engaged in a cooperative effort, and the statute, which applies both to the federal government and the states, just said, in that context, you have to share information with each other, it would be remarkable to say, at least when the states are participating in this sort of a program with the federal government to enforce the immigration laws or to enforce state criminal and immigration laws side by side, it would be extraordinary to say it's unconstitutional to require in that context that information be shared between these two sovereigns who are working together. Now, on the other side, as I mentioned, we don't have any context. I mean, the states have not come forward and said, here's what we the states want to do or want to refrain from doing that is actually prohibited or required by Section 1373 and that we think is commandeering and therefore unconstitutional. We just don't have that. That goes back to my original submission to some degree that this should not be reached because this is a totally abstract controversy. This is an add-on constitutional ruling. The controversy between the parties has been resolved by both district courts and also by this court, and so the case should just be brought to an end. The constitutional judgment should be vacated. I'm happy to entertain further questions or I'll reserve the balance of my time. Thank you, Counsel. Thank you, Your Honor. Good afternoon, and may it please the Court. Sarah Eisenberg from the San Francisco City Attorney's Office for Appellees. I'll be splitting time today with Sam Siegel from the California Attorney General's Office, so I'll be presenting for the first 15 minutes and then I'll turn the podium over to him to answer some questions specific to the California case and any other remaining questions that the Court has. Section 1373 strips state and local government of the ability to enact laws reflecting their chosen policies and values. Mr. Tenney just said that under the current state of the law, quote, what the state and cities want to do, they can do, but that is simply inaccurate. The state and local plaintiffs here want to limit their involvement with federal immigration enforcement to the greatest extent possible. The San Francisco Board of Supervisors, for example, has expressly stated in legislation that it wants to prohibit San Francisco employees from sharing immigration status information with ICE. Section 1373 prevents them from enacting those laws today. Analyzing a similar, a functionally similar federal law. But if the supervisors were to pass such laws and DOJ enforced it, then you would have a concrete controversy. Well, we would, but I think we actually have a concrete controversy right now here today. What the San Francisco Board of Supervisors has done is, for instance, we have a law that says our employees cannot assist in any way with the creation of a federal registry based on national origin or ancestry. They go on to say, because and only because of the existence of Section 1373, nothing in this section prohibits our employees from sharing immigration status information with ICE. But as soon as Section 1373 is declared unconstitutional, as we understand the city attorney's office is seeking, this provision will expire by operation of law. So this really is precisely what the situation was in Murphy. In Murphy, the federal government said that the state and local governments couldn't enact laws that authorized sports gambling. And looking at that law, here's what the Supreme Court said. It said it is as if federal officers were installed in state legislative chambers and were armed with the authority to stop legislators from voting on any offending proposals. A more direct affront to state sovereignty is not easy to imagine. And that is precisely the situation that the San Francisco Board of Supervisors and the other state and local legislative bodies that are plaintiffs here find themselves in. Section 1373 effectively installs a federal officer in our legislative chambers armed with the power to veto any legislation that would prohibit or even in any way restrict the sharing of immigration status information with ICE. And as the Supreme Court said, a more direct affront to our sovereignty is not easy to imagine. And that's why the Tenth Amendment is violated. Now in response, the federal government argues two things. First, they argue that this case is moot because the DOJ is no longer seeking to impose the immigration-related conditions on the burn-jag grounds. So I'll start there, and then I'll turn to the merits. At the outset of these cases, the plaintiffs were facing two independent injuries from 1373. One was a financial injury through the burn-jag conditions, but the other was an infringement on our sovereign right to enact the laws of our choosing and to conduct and direct the conduct of our own employees. And those two injuries were reflected in two separate claims that were brought in this case, unlike in our first 2017 burn-jag case, which raised the constitutionality of Section 1373 only as an argument for the invalidity of the burn-jag grant conditions. In this case, the 2018 case, because of these two separate injuries, we pled it as two separate claims, one challenging the validity of the burn-jag grant conditions and one independently challenging the validity of Section 1373 because of the strong infringement on our sovereign rights. So today, one of those injuries has been mooted by the government's action in the district court judgments, but the other is still very much alive. San Francisco has said that it wants to restrict the sharing of immigration status information. Oregon has similar laws on the books. So they're literally – well, not literally – they're figuratively our federal officers in our legislative chambers preventing us from enacting the laws that we want to enact. What has held up the Board of Supervisors from passing the supposed law that you just mentioned? They have passed the law that says you cannot – You cannot? The law that they have passed says you cannot assist with the creation of any registry. However, nothing in this statute prevents our employees from sharing immigration status information. So why don't they pass a law eliminating the – however, nothing in this? As they said, quote, due solely to the existence of Section 1373. So because 1373 tells them that they cannot do so, they have not done so. If they were to pass a law saying – or an ordinance saying regardless of 1373, you can't pass on any information, then we'd have a live controversy. But we don't have a live controversy now, do we? I believe that you do because the harm is from the law that tells the state legislature what it can and cannot do. So there was no threat of enforcement action in Prince. There was no threat of enforcement action in New York v. U.S. It is the fact that there is a law out there that is preventing us from enacting the laws that we want to enact. Have there been any steps taken by the federal government to seek a penalty against the city and county of San Francisco? Well, in the past, there have been – in addition to the burn-jag grants, there have been actions against our co-plaintiffs of California for allegedly violating Section 1373, and that was the U.S. v. California case. So the federal government has certainly made clear that when it believes we are acting outside of what is permitted by Section 1373, they can and will take actions to strike down those laws. Counsel, Judge Gould, if I could ask you a question. Has your client enacted laws that the government has and is currently striking down or making you suspend? I'm sorry, have we enacted laws currently that what? That the government is currently striking down or asking you to suspend. That the federal government is currently asking us to strike down or suspend. No, the federal government is not currently asking us to strike down or suspend any of our laws. But similarly, in Reno v. Condon and in Prince v. U.S., there was no indication that any enforcement action was being taken against the states there for their laws. So the Supreme Court's jurisprudence doesn't support the notion that there has to be a current active enforcement action by the United States for a state or local government to challenge federal action under the Tenth Amendment. What we do have is laws whose contours expressly depend on whether Section 1373 is unconstitutional or not. So what we have is the proverbial federal officer in our legislature telling us what they can and cannot do. Under those circumstances, this case is simply not moot. This Court has held that cases should not be dismissed as moot in the late stages of appeal, as we are, unless it is, and I quote, absolutely clear that the litigant no longer has any need of the judicial protection that it sought, and no effective relief can be granted. And that's the Carrick case that is cited, I believe, in Oregon and Portland's brief. And that is certainly not the case here, given that Section 1373 is actively preventing our state and local legislatures from enacting the laws that they want to enact. I'd like to turn to the substance with my last six minutes, unless there's more questions on. Please go ahead. So there are two central pillars or central tenets of the Tenth Amendment jurisprudence. One is that the federal government cannot dictate what legislation a state or local government can or cannot enact, and that is what Murphy stands for. There are prior cases that make clear the federal government can't require state or local governments to enact certain laws, but Murphy tells us that nor can they prohibit us from enacting the laws that we want to enact. So that's Tenet 1. And Tenet 2 is that the federal government can't regulate solely state and local governments in their sovereign capacity. Section 1373 does both of those things. It regulates just state and local governments in their sovereign capacity by telling us what laws we can and cannot enact. Now, the federal government argues that this is permissible nonetheless because it is a permissible information-sharing requirement, and respectfully, it simply is not. So putting a pin for a moment in the question of whether there even is an information-sharing exception to the Tenth Amendment, which the Supreme Court has never expressly adopted, we don't even have to get into that thorny or thicket in this case because Section 1373 simply isn't a ministerial information-sharing requirement. It doesn't just say you have to tell us X. It says you cannot pass the laws that you want to pass. So that violates Tenet 1.  of immigration status information, but from putting any restrictions at all on that information and from restricting the maintenance of such information by our agencies and departments. So this goes far, far beyond anything that the Supreme Court has even implied might be permissible as an information-sharing requirement. Indeed, no court has ever upheld a federal law that limits the authority of state and local legislative bodies in this way. Back to the Murphy case. In Murphy, the Supreme Court noted that they have never upheld the constitutionality of a federal statute that commanded state legislatures to enact or refrain from enacting state law. That is what 1373 does. It doesn't just require us to share information. It prevents us from enacting the laws that we want to enact. For all of those reasons, we think the claim is justiciable, should not be dismissed as moot, and that Section 1373 is unconstitutional under the Tenth Amendment. Thank you, Counsel. Thank you. We'll hear from Mr. Siegel. All right. Good afternoon, and may it please the Court, Sam Siegel on behalf of the State of California. We agree with Ms. Eisenberg that this case remains justiciable and that Section 1373 is unconstitutional, and I'm happy to answer any questions that the Court has for me on those topics. But I'm mainly here to respond to any questions that the Court might have with respect to our issue preclusion argument, which relates only to the California appeal. Now, the procedural history of this case is somewhat complicated, but our basic argument on issue preclusion is as follows. In the 2017 case, California sought two things. First, a declaratory judgment and an injunction regarding the illegality and enforcement of the grant conditions. And second, a judgment declaring Section 1373 facially unconstitutional and prohibiting the federal government from enforcing that statute against us. In that case, the district court granted us both forms of relief. But when the federal defendants appealed, they only sought review of the part of the judgment that related to the grant conditions. They did not seek review of the separate part of the judgment that declared 1373 facially unconstitutional and prohibited them from enforcing that provision against California. In this case, California, again, sought the same two forms of relief that we sought in the prior case, and the district court once again granted us both forms of relief. But in this case, unlike the prior appeal, the federal defendants are seeking review of the part of the judgment that declares Section 1373 unconstitutional. Under these circumstances, defendants are precluded from relitigating that issue against California. There's a valid and final judgment from the 2017 case that declares Section 1373 unconstitutional. The district court's determination of that issue in that case was actively litigated by the parties and was an essential part of the judgment. And it's black-letter law that when a party elects to appeal one issue but not the other, that party is precluded from relitigating the issue it chose not to appeal against the same adversary in a future case. I'd be happy to answer any questions the Court has. I think we have your argument in hand. Thank you, Your Honors. We'll hear rebuttal. Thank you, Your Honors. I just want to be clear. We're not saying that the case is moot. Our point is that the other side won. They got all the relief that remedied the injuries that gave rise to this litigation. And it's not just because we're not applying the grant conditions anymore. That wasn't true at the time of this Court's last ruling. It's because they claimed that there were particular enactments that we were arguing were inconsistent with Section 1373. This Court said that we were wrong and they were right about that. And so 1373 didn't impede anything that they actually said that they wanted to do. And that is what should bring the case to an end. Now they've come forward in their appellee brief in this Court for the first time with new enactments, and counsel highlighted one, so I'd just like to describe it so you can understand how different it is. As she said, it's about creating a registry relating to religion and national origin. So in the first place, something that you raise for the first time in your appellee brief shouldn't be the basis for a constitutional ruling. But the first question that a district court would have if they had raised this timely would be, okay, well, is anything about that inconsistent with Section 1373, or would it be without this proviso, or does this proviso matter in terms of the case or controversy before the Court, none of which has been done by the district court? But this provision is about sharing other types of information, and they have the same carve-out because they were concerned, presumably, that the federal government took a broad view of Section 1373 and therefore that they would be precluded from resisting creating a registry that isn't about immigration status. So this is just sort of something new injected that doesn't have the hallmarks of a concrete case or controversy. There's not something that they say, our officers were going to refrain from providing this piece of information in this context, and they're prohibited from doing so. And that's in sharp contrast with the cases the Supreme Court has resolved, to which counsel alluded. I mean, Murphy, the caption of the case is Murphy v. NCAA. That was a controversy between the state of New Jersey and the National Collegiate Athletic Association about whether a newly enacted law legalizing sports gambling was permissible under a federal statute. That's a concrete case or controversy. Prince was a circumstance in which there was a federal law and then there was a sheriff who came to the Supreme Court and said, they're telling me I have to take this concrete action, which is performing background checks, under federal law, and I think it's unconstitutional to require me to do so. That's a concrete case or controversy. In New York v. the United States, the federal statute said that a state had to either take title to certain environmental waste or to enact a regulatory regime that satisfied federal standards. That's a case or controversy. This is saying, we think we might want to enact a law someday that's different from what we're allowed to do, and we haven't enacted any such law. There's nothing our officers have to do or not do. That's not a case or controversy, and that's certainly not the case or controversy that was before the district courts at the time that these judgments were entered. The case or controversy there related to particular laws, each of which this court has already said do not conflict with Section 1373. I wanted to just comment briefly on the point about controlling state legislation, the merits point that was made. There are lots of provisions that have the effect of prohibiting states from enacting certain types of legislation. Anytime there's preemption, it has the effect of saying, even if you want to enact a law that's inconsistent with this federal requirement, you can't. It oversimplifies matters to say, every time there's a law like that, it's a federal official sitting in the state legislature. Unless there are more questions about any of that, I do want to turn just quickly to the preclusion issue. The federal government appealed the judgment previously, devoted pages and pages of our appellate brief to arguing that the district court both should not have reached the constitutional issue and to the extent that it reached it, resolved it incorrectly, explicitly asked that part of the judgment be vacated. Then no one thought at the time that this court's decision was saying, we don't have to reach the issue and therefore we will leave the district court judgment in this case to resolve for all time the constitutionality of an act of Congress. The state didn't say that in its appellee brief, that we had waived the issue and that therefore we were acceding to that judgment. When we went to the Supreme Court and filed a cert petition saying that this court had misconstrued Section 1373, the state's brief in opposition did not say, well, none of this matters, by the way, because there's an unappealed judgment that precludes them from applying 1373, whatever it means, for all time. I mean, nobody has ever thought that and it would be, given the way that the case was briefed and litigated and this court's disposition, it would be extraordinary to say this act of Congress is already precluded as to the biggest state in the nation because of the way this litigation unfolded. So we urge, again, that these judgments be vacated because the constitutional rulings were entirely unnecessary and unless there are further questions. Thank you, Your Honors. Thank you, counsel. I want to thank everybody for their briefing and arguments in this case. Very helpful to the court. And the case just started will be submitted for decision. We'll be in recess for a short period of time while we confer and then we will meet with the students. In the meantime, my law clerks have volunteered to take some questions, if you wish, and I don't know if Judge Baez's clerks are here or not. I have one clerk coming forward. Are you game to take some questions? There you go. Okay. Thank you very much. We'll be in recess. All rise.
judges: THOMAS, GOULD, BEA